**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION**

**SPORTS CAMP, INC. d/b/a Sports C.L.U.B.,**
a Florida not-for-profit corporation,

      Plaintiff,                      CASE NO.:

v.

**MASON CLASSICAL ACADEMY, INC.,**
a Florida not-for-profit corporation,

      Defendant.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE
<u>RELIEF AND DAMAGES</u>**

Plaintiff, SPORTS CAMP, INC. d/b/a Sports C.L.U.B., a Florida not-for-profit corporation ("Sports Club"), by and through its undersigned counsel, brings this action against Defendant MASON CLASSICAL ACADEMY, INC., a Florida not-for-profit corporation ("MCA"), and alleges as follows:

**<u>I. PARTIES</u>**

1.     Plaintiff Sports Camp, Inc. d/b/a Sports C.L.U.B. ("Sports Club") is a Florida not for profit corporation duly authorized to do business in the State of Florida, with its principal place of business in Collier County, Florida. Sports Club

is a tax-exempt organization pursuant to 26 U.S.C. § 501(c)(3).  Sports Club holds

a current, valid license issued by the Florida Department of Children and Families

("DCF") authorizing it to operate as a child care and after-school program

provider.

2.      Defendant Mason Classical Academy, Inc. ("MCA") is a Florida not-

for-profit corporation that operates a publicly funded charter school pursuant to

Section 1002.33, Florida Statutes, in Collier County, Florida.  Also pursuant to

Section 1002.33, Florida Statutes, MCA is a public school and part of the state's

program of public education.  MCA operates under a charter granted by the

Collier County School District, receives state and local public funding, is subject to

state oversight, and at all times material hereto has acted under color of state law

within the meaning of 42 U.S.C. § 1983.

## II. JURISDICTION AND VENUE

3.      This Court has original subject matter jurisdiction pursuant to 28

U.S.C. §§ 1331 and 1343(a)(3) and (4) over Plaintiff's claims arising under the

Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

4.      This Court has supplemental jurisdiction over Plaintiff's state law

claims under the Florida Deceptive and Unfair Trade Practices Act pursuant to 28

U.S.C. § 1367(a), and Plaintiff's claim for declaratory and injunctive relief relating

to Section 316.615, Florida Statutes (pertaining to school buses and bus operators), as those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

5.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant MCA is located and conducts its operations in this District, and all acts and omissions giving rise to this Complaint occurred within this District.

## III. FACTUAL BACKGROUND AND GENERAL ALLEGATIONS
### A. Mason Classical Academy and Its Competing After-School Program

6.    Mason Classical Academy is a publicly funded charter school serving students in kindergarten through twelfth grade in Collier County, Florida. By virtue of its charter, its receipt of public funds, and its operation under the authority and oversight of the State of Florida and the Collier County School District, MCA is a state actor for purposes of constitutional analysis under 42 U.S.C. § 1983.

7.    MCA has constructed a new campus at 7170 Vanderbilt Beach Road, Naples, Collier County, Florida (the "Vanderbilt Campus"), which is a state-of-the-art school campus equipped with modern bus and car lanes.  The Vanderbilt Campus is set to open commencing with the new school year on August 10, 2026.

8.    In or about February 2026, MCA decided to establish and begin operating an enhanced on-campus, fee-based after-school care program at its new

Vanderbilt Campus commencing with the start of the next school year on August 10, 2026 (the "MCA After-School Program"). Families of enrolled students will be charged fees to participate in the MCA After-School Program.

9.    The MCA After-School Program directly competes with independent, licensed after-school care providers — including Sports Club — for the enrollment of MCA's students.

10.    MCA derives revenue from the fees it collects for the MCA After-School Program, and MCA has a direct financial interest in maximizing student enrollment in, and the revenues generated by, its own After-School Program.

## B. Sports Club's DCF-Licensed Operations

11.    Sports Club is a DCF-licensed child care and after-school program provider that has operated lawfully in Collier County since 1999. Sports Club serves families with school-age children in the county, including families whose children are enrolled at MCA.

12.    Sports Club operates child care programs at various Collier County School District school facilities under various contracts for services.  Sports Club also operates child care programs at its popular "Sports Club Center" campus located at 3275 Pine Ridge Road, Naples, Collier County, Florida.  At all locations, Sports Club provides a high-quality physical and academic enrichment program to students in the pre-Kindergarten through elementary grades promoting

physical, social, emotional, academic, and intellectual development. Sports Club's programs teach Psychomotor Domain Movement Skills, Affective Domain Attitude Skills, Cognitive Domain Thinking Skills, Social and Emotional Development, as well as promoting homework, tutoring, literature, and other academic activities.

13.    A central component of Sports Club's after-school services is the provision of bus transportation to pick up enrolled students from the respective public schools (including MCA) at the close of the school day and transport them to the Sports Club Center, where after-school programming, supervision, and activities are provided.

14.    Sports Club is statutorily entitled to pick up students from various public schools including MCA pursuant to Section 316.615(5), Florida Statutes, which provides that "[n]onpublic school buses shall be allowed to deliver and pick up students either in the same areas as public school buses or in other areas adjacent to the public school bus delivery and pickup zones, as determined by the appropriate government entities."

15.    Sports Club has complied in all material respects with the applicable requirements of DCF licensure and all other state and local regulations governing after-school care providers, including regulations pertaining to vehicles (including

buses), drivers (including bus drivers), background screening of personnel, and safety protocols.

16.   The parents and guardians of at least 48 children enrolled at MCA have selected Sports Club as their after-school child care provider for the upcoming 2026-27 school year and have requested in writing that their children be released to Sports Club's authorized bus and personnel at the conclusion of the school day.

### C. Sports Club's Twelve-Year History of Busing Students from MCA to Sports Club Center

17.   Commencing in 2014 and continuing uninterruptedly through the end of the most recent school year in May 2026, Sports Club enrolled MCA students in its after school program by virtue of written consents obtained from the students' parents and/or legal guardians.  On a daily basis during the school year, Sports Club bused those students after school from MCA's current campus at 3073 Horseshoe Drive South, Naples, Collier County, Florida, to Sports Club's own "Sports Club Center" campus.

18.   In addition, Sports Club provided business services to MCA for purposes of various student field trips throughout the school year.

19.   At all times, Sports Club provided such after-school and field trip bus services continuously, uninterruptedly, without incident, and without complaint or special demands by MCA or its officials.

### D. MCA's Arbitrary and Pretextual Prohibition of Sports Club

20.    Notwithstanding Sports Club's valid DCF licensure, its compliance with all applicable regulations including those pertaining to buses and bus drivers, and the written authorization of parent-customers, MCA now refuses to permit Sports Club's buses and authorized personnel to pick up MCA students at the close of the school day.

21.    MCA has advanced various shifting and pretextual rationales for this prohibition, including purported concerns about safety, and/or the sufficiency of Sports Club's documentation or credentials. These stated justifications are false, are not applied consistently to similarly situated parties, and are pretextual.

22.    Upon information and belief, MCA permits other individuals and entities — including but not limited to family members, carpools, and other transportation providers — to pick up students in circumstances that are no more vetted, documented, or safety-compliant than Sports Club's established procedures.

23.    Upon information and belief, MCA permits other buses, including other public school buses and nonpublic school buses, to access its campuses, including its new Vanderbilt Beach Road campus, for a variety of reasons, including without limitation, delivery and pick up of students, field trips, athletic events, and academic competitions.

24.     MCA has applied its prohibitory policies selectively and disparately: it has enforced access restrictions against Sports Club while permitting similarly situated or less-regulated persons and entities to retrieve students without imposing comparable requirements.

25.     Ultimately, MCA's litany of pretextual rationales led to its position that while MCA will not prohibit its students from attending Sports Club's off-campus after school program, Sports Club may only pick up students if it complies with a litany of special rules made at MCA's sole discretion, and that "under no circumstances will a bus operated by Sports Club be permitted on campus or in the carline at any time. Should your client violate this the operator of the bus will be turned around by our officer and will be trespassed any driver attempts to pull a bus into carline after the first attempt."  Attached hereto as **Exhibit A** is a June 11, 2026, letter from MCA's legal counsel articulating this position.

26.     MCA's refusal to allow Sports Club's buses onto its campus is illegal. It violates Section 316.615, Florida Statutes, which provides:

> Nonpublic school buses shall be allowed to deliver and pick up students either in the same areas as public school buses or in other areas adjacent to the public school bus delivery and pickup zones, as determined by the appropriate government entities.

27.     The true and motivating reason for MCA's prohibition of Sports Club is not safety or regulatory compliance, but rather MCA's financial self-interest in

steering students — and their families' after-school program fees — away from competing providers like Sports Club and toward MCA's own, fee-generating After-School Program.

28.     MCA's conduct directly and proximately injures Sports Club by wrongfully excluding it from the market and causing the loss of enrolled students and associated revenue.

## COUNT I

### 42 U.S.C. § 1983 — Violation of the Fourteenth Amendment

### Equal Protection — Class-of-One: Irrational Disparate Treatment

29.     Sports Club re-alleges and incorporates by reference paragraphs 1 through 28 as if fully set forth herein.

30.     The Equal Protection Clause of the Fourteenth Amendment guarantees that no state shall deny to any person within its jurisdiction the equal protection of the laws.

31.     The Equal Protection Clause protects against arbitrary government action that intentionally singles out a person or entity for disparate treatment without any rational basis. See *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) ("class of one" equal protection claims are cognizable under § 1983 where a

plaintiff alleges that it has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment).

32.    Sports Club is a DCF-licensed after-school care provider that is similarly situated in all material respects to other individuals and entities that MCA permits to pick up students at the close of the school day, including other transportation providers, family members, and third-party representatives authorized by parents.

33.    MCA, acting under color of state law, has intentionally singled out Sports Club — or the class of independent, DCF-licensed after-school providers like Sports Club — and has prohibited it from picking up students, while permitting other similarly situated or less-regulated persons and entities to do so without imposing comparable or equivalent restrictions.

34.    MCA's differential treatment of Sports Club has no rational basis. MCA's proffered justifications — safety and documentation concerns — are pretextual: they are not applied uniformly, they are not supported by any factual assessment of Sports Club's operations, and they cannot withstand even the most deferential scrutiny in light of Sports Club's valid DCF licensure and compliance record, including busing and transportation.

35.    The actual motivation for MCA's discriminatory treatment of Sports Club is MCA's desire to eliminate competition in the after-school care market so

that MCA may capture the revenue generated by its own competing After-School Program. The elimination of a business competitor is not a legitimate governmental interest, and leveraging state authority to suppress private market competition for a government actor's own financial benefit provides no rational basis for unequal treatment.

36.    As a direct and proximate result of MCA's violation of the Equal Protection Clause, Sports Club has suffered concrete economic injury, including the loss of enrolled students, lost revenue, and harm to its business relationships and goodwill.

37.    Sports Club has no adequate remedy at law to fully redress the ongoing equal protection violation, and therefore seeks a declaratory judgment, preliminary and permanent injunctive relief, compensatory damages, and attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

38.    MCA, acting under color of state law, willfully, wantonly, and recklessly, and with an abuse of its power as a public school whose attending students are funded entirely through the taxpayers of the State of Florida, is determined to exercise their control and dominion over MCA's taxpayer-funded students at the end of the school day, and to hold them captive against their will and the will of their parents and guardians who wishes to utilize the services of Sports Club as a competing after school program, in deprivation of Sports Club's

constitutional right to Equal Protection, solely as a means to monetize those students and eliminating competition. Sports Club therefore also seeks an award of punitive damages in an amount proportionate to the Defendants' conduct and the harm they caused.

## COUNT II

### Pendent State Law Claim

### Florida Deceptive and Unfair Trade Practices Act

### Sections 501.201–501.213, Florida Statutes

39.    Sports Club re-alleges and incorporates by reference paragraphs 1 through 28 as if fully set forth herein.

42.    This Court has supplemental jurisdiction over this state law claim pursuant to 28 U.S.C. § 1367.

43.    The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Sections 501.201–501.213, Florida Statutes, declares unlawful unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce. FDUTPA is to be liberally construed to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce. § 501.202, Fla. Stat.

44.    Both Sports Club and MCA operate in the market for after-school care services for students in Collier County, Florida. MCA's operation of a fee-based After-School Program constitutes participation in trade or commerce within the meaning of FDUTPA.

45.    MCA has engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce, including the following:

(a) MCA has fabricated and asserted pretextual safety and documentation justifications for its exclusion of Sports Club, when the true, concealed motivation is to eliminate a business competitor and to direct students' families' after-school dollars to MCA's own program;

(b) MCA has made, and continues to make, material misrepresentations to parents, guardians, and the public — representing that its prohibition of Sports Club is grounded in legitimate safety and regulatory concerns — when MCA knows those representations are false and designed to conceal its anticompetitive purpose;

(c) MCA is attempting to make it materially impracticable for Sports Club to compete against MCA by conditioning any right of Sports Club's access to MCA students to (i) a prohibition against use of a bus

in clear violation of Section 316.615(5), Florida Statutes, and (ii) an attempt to self-regulate Sports Club's business drivers in other personnel who are already subject to Florida Statutes and regulation pursuant to Sections 316.615 and Chapter 1006, Florida Statutes;

(d) MCA has exploited its position as a publicly funded gatekeeper over its campus — a position derived from its charter and public funding, not from legitimate market competition — to coerce families into enrolling in MCA's own competing, fee-bearing After-School Program by foreclosing meaningful alternatives;

(e) MCA has leveraged its monopolistic control over campus access to restrain competition in the private market for after-school child care services, conduct which offends established public policy and is immoral, oppressive, and substantially injurious to competitors and consumers;

(f) MCA has denied families with a lower socio-economic background the opportunity to receive ELC grant funding offsets against the cost of their after school child care which are available to competing DCF-licensed programs; and

(g) MCA's conduct constitutes an unfair method of competition under the Federal Trade Commission Act, as incorporated by Section 501.204(2), Florida Statutes.

46.     MCA's conduct constitutes unfair methods of competition and unfair or deceptive acts or practices within the meaning of Section 501.204, Florida Statutes.

47.     Sports Club is aggrieved by MCA's FDUTPA violations and has suffered actual damages as a direct and proximate result thereof, including lost student enrollments, lost revenue, harm to goodwill and business relationships, and expenses incurred in attempting to remedy MCA's unlawful conduct.

48.     Consumer families whose children are enrolled at MCA have also been aggrieved by MCA's deceptive representations and exclusionary conduct, which deprive them of meaningful choice in the after-school child care marketplace and subject them to artificially constrained options and pricing.

49.     Sports Club is entitled to recover actual damages, declaratory and injunctive relief under FDUTPA pursuant to Section 501.211, Florida Statutes.

50.     Sports Club is entitled to reasonable attorneys' fees and costs pursuant to Section 501.2105, Florida Statutes, and all other available relief under FDUTPA.

## COUNT III

## Pendent State Law Claim

## Declaratory and Injunctive Relief –Right of Nonpublic

## School Buses to Pick Up Students

## Section 316.615, Florida Statutes

40.    Sports Club re-alleges and incorporates by reference paragraphs 1 through 28 as if fully set forth herein.

41.    This Court has supplemental jurisdiction over this state law claim pursuant to 28 U.S.C. § 1367.

42.    As stated above, a central component of Sports Club's after-school services is the provision of bus transportation that picks up enrolled students at their respective public schools (including MCA) at the close of the school day and transports them to Sports Club's facility, where after-school programming, supervision, and activities are provided.

43.    Section 316.615(5), Florida Statutes, which is part of the Florida Uniform Traffic Control Law (Chapter 316, Florida Statutes), provides:

> Nonpublic school buses shall be allowed to deliver and pick up students either in the same areas as public school buses or in other areas adjacent to the public school bus delivery and pickup zones, as determined by the appropriate government entities.

44.    Section 316.615(3), Florida Statutes, provides:

> A person may not operate or cause to be operated a motor vehicle covered by subsection (1) or subsection (2) when transporting school children unless the operator has met the physical examination requirements established by law and by rule of the State Board of Education. The operator of such a motor vehicle shall pass an annual physical examination and have posted in the vehicle a certificate to drive the vehicle.

Sports Club's bus operators have complied in all material respects with the requirements established by Florida law and by rule of the State Board of Education, such operators have passed the annual physical examination, and they routinely post their certificate to drive in the buses that they drive.

46. Sports Club has complied in all material respects with the applicable requirements of DCF licensure and all other state and local regulations governing after-school care providers, including regulations pertaining to vehicles (including buses), drivers (including bus drivers), background screening of personnel, and safety protocols.

46. Based on the structure and wording of Section 316.615, Florida Statutes, it is apparent that matters of inspection, licensure, and operations pertaining to nonpublic school buses and operators such as those utilized by Sports Club, are addressed by the State of Florida and its various agencies (including the Department of Motor Vehicles and the State Board of Education), and are not within the purview of an individual public school such as MCA.

47.    Based on the wording of Section 316.615(5), Florida Statutes, it is apparent that the only discretion that a public school such as MCA may exercise with respect to nonpublic school buses delivering or picking up students, is the location of such pick up and delivery zone.

48.    Nevertheless, MCA, by letter from their counsel dated June 11, 2026 (**Exhibit A** hereto), has altogether prohibited Sports Club, upon threat of criminal trespass, from picking up students after school from MCA with a nonpublic school bus; and MCA has further conditioned Sports Club's use of nonpublic school buses upon a litany of "requirements," including "abid[ing] by MCA policies and procedures at the sole discretion of MCA," which "must be agreed in writing by Sports Club before any non-parent or guardian working on behalf of Sports club seeks to enter MCA's campus," including

(a) "The drivers will need to have the car line tag for the children they are picking up, or the children will not be released;"

(b) "Sports Club drivers, employees, and agents must follow MCA's carline procedure at the sole discretion and guidance of MCA;"

(c) "Any change to the MCA handbook as it relates to the Vanderbilt campus must be followed regardless of when it is implemented by MCA and Sports Club shall have no input in MCA's policies and procedures;"

(d) "[U]nder no circumstances will a bus operated by Sports Club be permitted on campus or in the carline at any time.  Should [Sports Club] violate this the operators of the bus will be turned around by our officer and will be trespassed…."

(e) "[Sports Club] will be permitted to pick up students in the [sic] traditional car or small passenger van (no more than 10 seats) and wait in the normal line with no expedited pick up.  Any van must be under the requirements that trigger bus requirements."

(f) "Every driver entering campus must provide their license, certification, contractual agreement with Sports Club indicating they are an employee of Sports Club, as well as all required background screening to MCA (10) days prior to entering campus.  Any failure to do so will result in an immediate ban on all drivers Sports Club seeks to utilize and take all necessary legal action for unauthorized entry on to the grounds."

(g) "[Sports Club] will provide MCA with the signed authorizations from parents."

(h) "Each of the above points must be expressly agreed to without any change and an acknowledgment form must be signed by your

client with each point above certifying compliance prior to the 2026-2027 Academic School Year."

49.　While Sports Club is willing to accommodate the reasonable requirements of MCA with respect to picking up students (for instance, subparagraphs (a), (b) and (g) above, as a practical matter Sports Club must be allowed to utilize its nonpublic school buses to pick up students, and Sports Club questions whether MCA has the statutory authority to require certain of the above other conditions, particularly those listed in (c) through (f), and (h) above.

50.　The "status quo" in this instance is that for the past twelve (12) years, Sports Club has utilized a nonpublic school bus to pick up students from MCA, and also provided the same buses to MCA for field trips throughout the school year. During that time, MCA never raised the presence of a nonpublic school bus as a safety issue, and never compelled Sports Club to comply with the litany of procedural requirements now being imposed upon Sports Club's buses and operators.

51.　Given that MCA is illegally prohibiting Sports Club's use of a nonpublic school bus in violation of Section 316.615(5), Florida Statutes, and on the assumption that this Court will preserve the status quo and enjoin MCA from now prohibiting Sports Club's nonpublic school buses to pick up MCA students,

it will be incumbent upon MCA to provide clarity as to the pick-up location for Sports Club's buses.

49.     Sports Club is entitled declaratory and injunctive relief, including preliminary injunctive relief, as to the issue of whether it may utilize nonpublic school buses to pick up students from MCA, and the extent to which MCA may further regulate that process.

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Sports Camp, Inc. d/b/a Sports C.L.U.B., respectfully requests that this Court enter judgment in its favor and against Defendant Mason Classical Academy, Inc., and grant the following relief:

A. A declaratory judgment pursuant to 28 U.S.C. §§ 2201–2202 declaring that MCA's refusal to permit Sports Club to pick up students at the close of the school day violates the Equal Protection Clause of the Fourteenth Amendment;

B. A preliminary and permanent injunction enjoining MCA, its officers, agents, employees, servants, and all persons acting in active concert or participation with MCA, from prohibiting, impeding, or interfering with Sports Club's ability to pick up students by bus at MCA's campus at the close of the school day, where the students are enrolled in Sports Club's after-school program and where the

students' parents or guardians have authorized such pickup, and declaring the extent to which MCA may further regulate the bus pick up process;

C. An award of compensatory damages in favor of Sports Club for lost revenue, lost business opportunities, and harm to its goodwill and business relationships resulting from MCA's unconstitutional and unlawful conduct;

E. Upon the Court's further consideration, and award of punitive damages against MCA for its willful, wanton, and reckless actions in abusing its power over the taxpayer-funded students who attend MCA, to the detriment of Sports Club as a competitor and of parent/guardian consumers, solely for the monetary gain of MCA;

F. An award of actual damages in favor of Sports Club under FDUTPA for MCA's unfair methods of competition and deceptive trade practices;

G. An award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and Section 501.2105, Florida Statutes;

H. Pre-judgment and post-judgment interest at the maximum rate permitted by applicable law; and

I. Such other and further relief as this Court deems just, equitable, and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Seventh Amendment to the United States Constitution, Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 23rd day of June, 2026.

__/s/Steven J. Bracci_____
STEVEN J. BRACCI
Florida Bar No.: 0157562
STEVEN J. BRACCI, PA
9015 Strada Stell Court, Suite 102
Naples, Florida 34109
Telephone: (239) 596-2635
Facsimile:  (239) 236-0824
Email: steve@braccilaw.com
*Counsel for Plaintiff*