UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SPORTS CAMP, INC. d/b/a SPORTS C.L.U.B., a Florida not-for-profit corporation,

Plaintiff,

v. Case No: 2:26-cv-02084-JES-NPM

MASON CLASSICAL ACADEMY, INC., a Florida not-for-profit corporation,

Defendant.

---

**ORDER**

There is no crying in baseball, but there are apparently lawsuits. Plaintiff Sports Camp, Inc. ("SCI") runs an after-school baseball program for local children. For years, SCI and Defendant Mason Classical Academy, Inc. had a straightforward arrangement: SCI picked up the kids enrolled in its program and brought them to camp. But on the eve of this coming school year, Mason Classical abruptly changed the rules. It now refuses to let SCI shuttle students unless the company yields to a litany of new conditions. Hoping to restore the longstanding status quo, SCI has sued and asks this Court to issue

a preliminary injunction. (Doc. 2.)[1] For the reasons below, SCI's motion is **DENIED**.[2]

## I. Background

For over a decade, Mason Classical allowed SCI to pickup its students and bus them to camp. (Doc. 1 at ¶ 17.) This relationship changed after Mason Classical constructed a new facility and established its own after-school program. (*Id.* ¶¶ 7-8, 20-21.) Mason Classical informed SCI that commercial buses were no longer welcome on school grounds. There was also a laundry list of new rules—*e.g.*, providing a car line tag for all children being picked up, limiting the size of the vehicle to no more than ten seats, and providing each driver's license, certification, employment agreement with SCI, and background check. (Doc. 3-7.)

Believing these demands violate federal and state law, SCI sued. (Doc. 1.) Along with the complaint, it filed a motion for a preliminary injunction to stop Mason Classical from enforcing its new rules. (Doc. 2.) Without immediate

[1] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and subsequent citations.

[2] SCI also asks for a temporary restraining order. (Doc. 2 at 3-4.) But because Mason Classical has appeared in the case and responded to the motion, "a TRO would not be appropriate." *Trimble v. United States Soc. Sec. Admin.*, No. 207CV00508FTM34DNF, 2008 WL 11409127, at *2 (M.D. Fla. Jan. 18, 2008).

intervention, SCI says it will suffer irreparable harm—losing enrolled families and business goodwill—before the case even starts.

## II. Legal standard

A preliminary injunction is appropriate only where the movant shows: (1) a substantial likelihood of success on the merits; (2) he will suffer irreparable injury unless the injunction is issued; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000); *see also Fla. Agency for Health Care Admin. v. Adm'r for Centers for Medicare & Medicaid Servs.*, 161 F.4th 765, 781 (11th Cir. 2025). "[A] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to each of the . . . prerequisites." *Siegel*, 234 F.3d at 1176. This is especially true where the movant seeks a mandatory injunction—that is, one seeking affirmative action. *See Cable Holdings of Battlefield, Inc. v. Cooke*, 764 F.2d 1466, 1474 (11th Cir. 1985) ("Only in rare instances is the issuance of a mandatory preliminary injunction proper.").

## III. Discussion

The Court starts with irreparable harm, because in this context, it is the ballgame. "A court need not address the other elements of a preliminary injunction when no showing of irreparable injury was made." *Antoine on behalf of I.A. v. Sch. Bd. of Collier Cnty.*, 301 F. Supp. 3d 1195, 1199 (M.D. Fla. 2018).

SCI maintains that if Mason Classical blocks its buses on the first day of school, parents will scramble for alternative after-school care and disenroll their children, taking their tuition dollars and goodwill with them. (Doc. 2 at 14.) To the extent SCI points to lost tuition fees, that is a textbook economic injury. The math is straightforward: if those families take their business elsewhere, the lost revenue can be easily calculated and fully repaid with a standard damages award down the road. *See, e.g.*, *More Auto. Prods., Inc. v. Dollar Rent a Car, Inc.*, No. 2:24-CV-457-SPC-NPM, 2024 WL 3203179, at *5 (M.D. Fla. June 27, 2024) ("An injury is irreparable only if it cannot be undone through monetary remedies.").

The other alleged damages—loss of goodwill and market share—are theoretical. While SCI claims that its exclusion from campus will trigger a "self-fulfilling market reality," it offers no proof that a single family has threatened to disenroll or will not come back. A claim of irreparable injury "must be neither remote nor speculative, but actual and imminent." *Ne. Fla.*

*Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990). "[SCI] has not identified a single customer it has lost or will lose based on [Mason Classical's] actions or explained how any customer goodwill has been lost or will be lost in the future." *Agilysys, Inc. v. Hall*, 258 F. Supp. 3d 1331, 1358 (N.D. Ga. 2017). Such "speculative allegations of irreparable harm [are] insufficient to justify the broad preliminary injunction [SCI] seeks." *Id.*

But even assuming there is an irreparable injury, the same result follows because FCI has not shown a substantial likelihood of success on the merits. The complaint has three claims: Count I—Violation of the Equal Protection Clause of the Fourteenth Amendment; Count II—Violation of Florida Deceptive and Unfair Trade practices Act; and Count III—Declaratory and Injunctive Relief under Fla. Stat. § 316.615. (Doc. 1.) None of these theories carry the day.

FCI's equal protection claim does not allege discrimination based on membership in a protected class. It instead asserts a "class of one" claim as recognized by the Supreme Court in *Vill. of Willowbrook v. Olech*, 528 U.S. 562 (2000). "To prove a class of one claim, the plaintiff must show (1) that he was treated differently from other similarly situated individuals, and (2) that the defendant unequally applied a facially neutral ordinance for the purpose of

discriminating against him." *Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1307 (11th Cir. 2009). The Eleventh Circuit has "frequently noted that the similarly situated requirement must be rigorously applied in the context of class of one claims." *Id.* To be similarly situated requires a comparator that is "prima facie identical in all relevant respects." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1204 (11th Cir. 2007).

None of the comparators offered by SCI are identical in all relevant respects. But that aside, SCI cannot show it was treated differently. Screenshots of Mason Classical's website inform parents that they are responsible for providing transportation to *any* third-party after-school programs, not just SCI. (Doc. 14-3 at 2.) In fact, Mason Classical specifically mentions Salvation Army alongside SCI as being prohibited from picking students up at its campus. (*Id.*) When the rules apply equally across the board, a plaintiff cannot show that it was singled out for worse treatment.

SCI similarly failed to show that Mason Classical lacks a rational basis for its action.[3] Rational basis only requires that the challenged treatment be rationally related to some legitimate government purpose. *DeYoung v. Owens*, 646 F.3d 1319, 1327-28 (11th Cir. 2011). Mason Classical's restrictions—*e.g.*,

---

[3] Though SCI claims strict scrutiny should apply, it does not explain how. (Doc. 2 at 11.) SCI has not shown a classification invoking strict scrutiny.

providing the car line tag for the children they are picking up, limiting the vehicle to a traditional car or small passenger van, and providing driver's licenses, certifications, and contracts with SCI—are rationally related to its legitimate government purpose of student safety.[4] *See Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 801-02 (11th Cir. 2022) (in public school environments "the State is responsible for maintaining discipline, health, and safety"). Though there may be some nefarious financial incentive for excluding SCI, Mason Classical's actions are still rationally related to keeping its students safe. As such, SCI is not likely to succeed on the merits of its equal protection claim.

A claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") requires: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *See Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cnty., Inc.*, 169 So. 3d 164, 167 (Fla. Dist. Ct. App. 2015). A deceptive practice is one that is "likely to mislead" consumers. *See Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. Dist. Ct. App. 2000). An unfair practice is one that "offends established public policy and one that is immoral,

[4] The Court will assume Mason Classical is a state actor for purposes of the motion.

unethical, oppressive, unscrupulous or substantially injurious to consumers." *See Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006).

By no stretch of the imagination can Mason Classical's exclusion of SCI be considered either a deceptive act or unfair practice. No one is likely to be misled by Mason Classical's statement that third-party companies are no longer permitted to pick up students for safety concerns. It is common sense that a school can (and will) control access to its campus—especially when it comes to retrieving students. *See, e.g.*, *Marty v. Anheuser-Busch Companies, LLC*, 43 F. Supp. 3d 1333 (S.D. Fla. 2014). And while parents may be inconvenienced in coordinating alternative transport to SCI, by no means can the Court say Mason Classical's decision "offends established public policy" or an action that "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Rollins, Inc.*, 951 So. 2d at 869; *cf. Intercoastal Realty, Inc. v. Tracy*, 706 F. Supp. 2d 1325, 1335 (S.D. Fla. 2010) (finding sufficient allegations to support a FDUTPA claim where the "[c]omplaint [was] replete with . . . deceptive act[s] and unfair practice[s] that Defendant employed to deprive Plaintiff of a commission for the sale of the Property").

Finally, SCI is unlikely to succeed under Fla. Stat. § 316.615 because it provides no private claim. In determining whether a cause of action exists,

Florida courts look to legislative intent. *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, 94 So. 3d 541, 550-51 (Fla. 2012). Here, the statute clearly states any "violation of this section is a noncriminal traffic infraction, punishable as a nonmoving violation as provided in chapter 318." Fla. Stat. § 316.615(2)(b)(6). No language of § 316.615 permits private citizens to cite a person for the violation, and the procedure in Chapter 318 suggests only that state actors impose and review the citations. Fla. Stat. § 318.14 (laying out the procedures for noncriminal traffic infractions). Without any statutory language creating private cause of action, or explanation for how one exists, SCI is unlikely to succeed on Count III.[5]

## IV. Conclusion

Without a substantial likelihood of success on the merits or a truly irreparable injury, this Court cannot grant the extraordinary relief of a preliminary injunction. Accordingly, it is **ORDERED:**

(1) SCI's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 2) is **DENIED**.

[5] SCI cannot reframe their reliance on § 316.615 by pointing to Florida's Declaratory Judgment Act because without some bona fide dispute or adequate justiciable question—*e.g.*, a private cause of action—any ruling would be an improper advisory opinion. *See Torres v. Shaw*, 345 So. 3d 970, 975-76 (Fla. Dist. Ct. App. 2022).

**ENTERED** in Fort Myers, Florida, on August 4, 2026.

Kyle C. Dudek
United States District Judge