UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SPORTS CAMP, INC., A FLORIDA NOT-FOR-PROFIT CORPORATION;

Plaintiff,

v.

Case No. 2:26-cv-02084-KCD-NPM

MASON CLASSICAL ACADEMY, INC., A FLORIDA NOT-FOR-PROFIT CORPORATION;

Defendant,
________________________________/

**ORDER**

When Defendant Mason Classical Academy opened its new school campus, it changed the rules for the afternoon pickup line. Mason Classical told Plaintiff Sports Camp, Inc., a private after-school care provider, that its buses were no longer welcome. Unhappy with the restriction, Sports Camp decided to make a federal case out of it. Sports Camp claims that Mason Classical violated the Equal Protection Clause and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") by imposing extra requirements on its transport vehicles. (Doc. 40 ¶¶ 47-54.) It also seeks an injunction under state law that would enjoin Mason Classical "from prohibiting, impeding, or interfering with [its] nonpublic school buses' access to [the] Vanderbilt Campus for the delivery and pickup of students." (*Id.* ¶ 72.)

This Court will not referee the school's pickup line. Because Mason Classical had a rational basis for excluding the Sports Camp buses—like managing campus congestion and boosting its own after-school program—the Equal Protection claim fails at the outset. And with the federal question resolved, the remaining state-law claims are best left for Florida courts.

## I. Background

For years, Mason Classical allowed Sports Camp to bus students to its off-campus program. (*See* Doc. 40 ¶ 21.) The relationship soured, however, after Mason Classical constructed a new facility and established its own after-school program. (*Id.* ¶¶ 8, 11, 15.) After informing Sports Camp that Mason Classical "may be going in a different direction," it requested detailed information about Sports Camp's operation. (*Id.* ¶¶ 17-18.) Just two days later, Mason Classical's Board of Directors convened to "discuss[] the pros and cons [of] using Sports C[amp]" versus growing its own option. (Doc. 40-1, Ex. A.)

The "[c]onsenus" was that Mason Classical had "outgrown the need for Sports C[amp]." (*Id.*) The school reasoned it was "a safer and better option for [their] families to continue growing the MCA Aftercare program." (*Id.*) Shortly after, the board reconvened and again "discussed the benefits of keeping the MCA Aftercare program in-house rather than having outside vendors come to the school." (Doc. 40-2, Ex. B.) Specifically, the board commented that the

"MCA Aftercare program will grow, offering more opportunities for families in-house." (*Id.*)

Following these board meetings, Mason Classical informed Sports Camp that buses were no longer allowed on school grounds. (*See* Doc. 40-3, Ex. C.) And while Sports Camp could continue to transport students using vans, it had to follow new rules—*e.g.*, providing a car-line tag for all children being picked up; limiting vehicle size to ten seats; disclosing each driver's license, certification, and employment agreement with Sports Camp; and submitting to background checks. (*See* Doc. 40-4, Ex. D.)

Sports Camp soon noticed that these requirements didn't apply to everyone. Other third-party vehicles of similar size regularly picked up students without any of the same demands. (Doc. 40 ¶ 27.) Mason Classical also contracted with a third-party bus company to transport students for athletic practice—again, without following the new rules. (*Id.* ¶¶ 31-33.)

That double standard drove Sports Camp here. Mason Classical now moves to dismiss the complaint in its entirety. (Doc. 42.)

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim that is plausible on its face. *Andre v. Clayton Cnty.*, 148 F.4th

1282, 1291 (11th Cir. 2025).[1] That means the plaintiff must plead enough factual content for the court to reasonably infer that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). All well-pleaded facts are accepted as true, and any reasonable inferences are construed in the light most favorable to the plaintiff. *MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co.*, 40 F.4th 1295, 1302 (11th Cir. 2022). The court "need not, however, accept as true a complaint's conclusory allegations or legal conclusions." *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1251 (11th Cir. 2021).

## III. Discussion

To get into federal court, Sports Camp relies on a lone "class of one" claim under the Equal Protection Clause (Count I). Rounding out the complaint are two state-law claims for deceptive trade practices and equitable relief (Counts II-III). Sports Club's federal claim is a nonstarter, and without that jurisdictional anchor, the Court declines to hack through the state-law remnants.

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

**A. Sports Club has not plausibly disproven every conceivable rational basis for Mason Classical's restrictions.**

Bringing an Equal Protection challenge without alleging discrimination based on a suspect or quasi-suspect classification, as here, is a tall task. "Our cases have recognized successful equal protection claims brought by a class of one, where the plaintiff alleges [1] that she has been intentionally treated differently from others similarly situated and [2] that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Identifying a similarly situated comparator is a delicate balance. Accepting allegations that are "[t]oo broad" risks subjecting "nearly all state regulatory decisions to constitutional review in federal court," which denies state actors the "critical discretion" necessary to perform their duties effectively. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1203 (11th Cir. 2007). But definitions that are "too narrow" may create a zone of unequal protection where irrational discrimination thrives. *Id.* The balance leads to an analytical fork in the road concerning whether the challenged decision was "one-dimensional" or "multi-dimensional." *See id.* Fortunately, the Court need not travel that far to resolve this case. We can assume that Sports Club has pled a sufficient comparator. The main event is whether Mason Classical acted with a rational basis.

Even at this stage, a rational basis challenge is a heavyweight fight. *See Williams v. Pryor*, 240 F.3d 944, 948 (11th Cir. 2001) (explaining that the government loses rational basis "only in an exceptional circumstance"). We must assume that the contested action is constitutional and place the burden on the challenger to "negate *every* conceivable basis that *might* support it[—]even if that basis has no foundation in the record." *Leib*, 558 F.3d at 1306 (emphasis added). The state actor[2] "has no obligation to produce evidence to sustain the rationality" of its decisions despite any "imperfect fit between means and ends." *Id.* At bottom, the hunt here is for "some conceivable reason supporting the government action" that the Court can see from the complaint and its attached exhibits. *Barati v. Fla. Att'y Gen.*, No. 18-13998, 2021 WL 2911729, at *5 (11th Cir. July 12, 2021); *Griffin Indus.*, 496 F.3d at 1199.

Sports Club mainly attacks Mason Classical's safety rationale. It emphasizes that "[s]afety appears nowhere in th[e] minutes" where the board weighed the pros and cons of using Sports Club versus growing its own "Aftercare program." (Doc. 45 at 12-13 (citing Doc. 40 ¶ 14).)

That argument is a real head-scratcher. Sports Club's complaint cites the February 4, 2026, board meeting. (*See* Doc. 40 ¶ 14.) And it attaches the "Minutes Board of Directors Work Session: Wednesday, February 4th, 2026"

---

[2] The Court will assume that the school is a state actor for present purposes.

as Exhibit A. (*See* Doc. 40-1.) According to the exhibit, the board discussed safety: "It is a *safer* and better option for our families to continue growing the MCA Aftercare program at both campuses[.]" (*Id.* (emphasis added).)

So it appears Mason Classical *did* decide that safety concerns favored treating Sports Club differently. *See Griffin Indus.*, 496 F.3d at 1206 ("[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern."). And it's not hard to find a rational basis for that decision. For example, Mason Classical may have felt that students attending its aftercare program on its own campus were more secure than students shipped off to a Sports Club facility. (*See* Doc. 40 ¶¶ 11-12, 22 ("The new Vanderbilt campus offers impeccable safety and security").) Nothing more is needed here. *See Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 802 (11th Cir. 2022) ("in a public school environment, the State is responsible for maintaining discipline, health, and safety").

Even setting the safety issue aside, Mason Classical's decision remains defensible. Sports Club builds its entire case on the theory that the school weaponized its rules to crush a competitor and pad its own after-care program. That itself is a rational basis. *See Hope for Fams. & Cmty. Serv., Inc. v. Warren*, 721 F. Supp. 2d 1079, 1146-47 (M.D. Ala. 2010) (explaining that even regulations effectively creating a monopoly are not per se unconstitutional under rational-basis review). For better or for worse, a state actor has broad

discretion to make economic-based decisions "deemed to promote public welfare[.]" *Nebbia v. New York*, 291 U.S. 502, 537 (1934). Here, that includes Mason Classical deciding which programs can transport students off its property and out of its care.

Sports Club's Equal Protection challenge fails because the complaint does not negate every conceivable rational basis for Mason Classical's decision to rewrite its car line rules. *See Leib*, 558 F.3d at 1306. Whether the school wanted to ease traffic, improve campus security, or simply promote its own after-school program, any of those reasons is enough to justify treating Sports Club differently.

**B. The Court declines to exercise supplemental jurisdiction.**

Federal courts must respect the limits of our jurisdiction—a boundary that protects both the separation of powers and state sovereignty. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 422-23 (2021); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). While federal courts have the power to decide "supplemental" state-law claims even after the source of federal jurisdiction is gone, that does not mean we must use it. *See* 28 U.S.C. § 1367(a), (c); *Gibbs*, 383 U.S. at 725-26. Where the federal claim creating jurisdiction is dismissed early, leaving only novel or complex state-law issues, it's wise to leave "resolution to state tribunals." *Gibbs*, 383 U.S. at 726.

Those are the circumstances presented here, and so the Court will decline supplemental jurisdiction over the state-law claims. *See Jordan v. Sec'y, Fla. Dep't of Child. & Fam. Servs.*, 723 F. App'x 690, 694 (11th Cir. 2018). Florida's courts are better equipped to grapple with FDUTPA and decide whether a "noncriminal traffic infraction" warrants an injunction. *See* Fla. Stat. § 316.615(6).

One last issue. Sports Club asks for leave to amend "should the Court identify any deficiency." (Doc. 45 at 25.) But a new pleading cannot fix the problems discussed here. The basic facts preclude an equal protection claim. No amount of creative pleading can erase the reality that Mason Classical has "some conceivable reason supporting [its] action." *Barati*, 2021 WL 2911729, at *5.

## IV. Conclusion

Whether it was wise policy for Mason Classical to effectively expel Sports Club is neither the concern of the Equal Protection Clause nor of this Court. Count I is therefore **DISMISSED with prejudice**. The Court declines to exercise supplemental jurisdiction over the state-law claims and leaves it to Sports Club to decide whether to try again in state court. Counts II and III are thus **DISMISSED without prejudice**. The Clerk is directed to enter a judgment consistent with the Court's ruling, terminate all remaining deadlines, and close the case.

**ORDERED** in Fort Myers, Florida on November 9, 2026.

Kyle C. Dudek
United States District Judge